IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 5, 2024

## NATASHA C. v. DUSTIN C.[1]

**Appeal from the General Sessions Court for Hardin County**
**No. 9608      Daniel L. Smith, Judge**

_____

**No. W2024-00201-COA-R3-CV**

_____

Mother appeals the trial court's decision to modify the parties' parenting plan and name Father primary residential parent of the parties' two children. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and JEFFREY USMAN, JJ., joined.

Casey A. Long, Lawrenceburg, Tennessee, for the appellant, Natasha C.

## MEMORANDUM OPINION[2]

### I. FACTUAL AND PROCEDURAL HISTORY

---

[1] In actions involving juveniles, it is this Court's policy to protect the privacy of the children by using only the first name and last initial, or only the initials, of the parties involved.

[2] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

In August 2019, Dustin C. ("Father") and Natasha C. ("Mother") were divorced by final decree entered by the Hardin County General Sessions Court ("the trial court"). Pursuant to an agreed permanent parenting plan, the parties' two children, Daughter, born in 2014, and Son, born in 2017, were to spend 182.5 days per year with each parent in a week-on, week-off schedule; Mother was designated the primary residential parent. The parenting plan was modified in September 2020, but the parties once again agreed to follow an equal parenting schedule beginning in the summer of 2021. The parenting plan further stated that Daughter would finish out the school year in home school, but that she would be placed in public school for the 2021–2022 school year unless the parties otherwise agreed.

In August 2021, Mother filed a petition to modify the parenting plan. Therein, Mother alleged that, inter alia, Father had not been performing "basic parenting tasks," ensuring the children maintained proper hygiene, or allowing Mother to communicate with the children during his parenting time. Mother also alleged that Father had been verbally and psychologically abusive to the children and verbally abusive to Mother in the presence of the children. Mother's attached proposed parenting plan named her primary residential parent and awarded Father only 80 days of parenting time.

In October 2021, Father answered Mother's petition, denying the material allegations contained therein. Additionally, Father filed a counter-petition to modify the parenting plan. In his counter-petition, Father alleged that Mother allows her family to smoke and drink alcohol around the children, that Mother's home is unclean, that the children returned to his care flea bitten and with head lice on multiple occasions, that Mother refused to send Daughter to public school as agreed, and that Mother refused to administer medication recommended by the children's counselor to treat attention deficit hyperactivity disorder ("ADHD"). Father's attached proposed parenting plan named him primary residential parent and awarded Mother only 80 days of parenting time. Mother eventually answered Father's petition, also denying the material allegations contained therein.

On November 14, 2022, Father filed a sworn motion for an ex parte order of emergency custody over the children. Therein, Father alleged, inter alia, that an incident occurred in Mother's home wherein Mother's boyfriend ("Boyfriend") punched Daughter in the face with his fist, resulting in a visible bruise on the child's cheek. According to the motion, despite Daughter's pleas, Mother did nothing. Attached to Father's motion was a police report and photographs of the child's injury. The trial court entered an order granting Father's motion for emergency custody on November 14, 2022. The motion provided that Father would have custody of the children pending further orders of the court and that a preliminary hearing would occur on November 21, 2022. The record does not reflect whether such a hearing occurred.

Instead, after a failed attempt at mediation in February 2023, the trial court held a

final hearing on the competing petitions to modify the parenting plan on July 31, 2023. At the time of the hearing, Mother had not had contact with the children since the November 2022 ex parte order. The trial court eventually entered an order on January 12, 2024, granting Father's petition to modify the parenting plan and naming him primary residential parent of the children. In its order, the trial court specifically found that Father's allegations of abuse by Boyfriend were credible and that it was in the children's best interests to spend more time with Father. The trial court declined to adopt Father's proposed parenting plan but fashioned its own residential schedule in which Mother was awarded parenting time every Wednesday evening and every other weekend. Mother was also ordered to pay child support. From this order, Mother now appeals.

## II. ISSUE PRESENTED

Mother raises a single issue in this appeal: whether the trial court erred in finding that it was in the children's best interests for Father to be named primary residential parent and entering a parenting plan that awarded Father substantially more time with the children.

## III. STANDARD OF REVIEW

"In this non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. We review the trial court's resolution of questions of law de novo, with no presumption of correctness." *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013) (citations omitted). It is well settled that trial courts are given broad discretion in matters of child custody, visitation, and related issues; consequently, appellate courts are reluctant to second-guess a trial court's determinations regarding these important domestic matters. *See id.* at 693; *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980).

## IV. ANALYSIS

In any action seeking to modify the custody of a child, the threshold question is whether a material change in circumstance has occurred after the initial custody determination. *See Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). If the parent meets his or her burden to show a material change in circumstances, "it must then be determined whether the modification is in the child[ren]'s best interests." *Id.* (citing Tenn. Code Ann. § 36-6-106). Here, Mother does not appeal the trial court's finding that there was a material change in circumstances justifying a change in custody. So we proceed to consider whether the trial court erred in finding that the children's best interests were served by naming Father primary residential parent and placing the children in his care the majority of the time.[3] *See, e.g.*, *Bastone v. Bastone*, No. E2020-00711-COA-R3-CV, 2021

---

[3] In addressing this issue, we note that Mother provided this Court with a statement of the evidence,

WL 1711098, at *7 (Tenn. Ct. App. Apr. 30, 2021) (proceeding to the best interest analysis where neither parent "contested the trial court's finding of a material change in circumstance").

Tennessee Code Annotated section 36-6-106(a) provides that "in any . . . proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child." To determine a child's best interest, section 36-6-106(a) further provides that the trial court "shall consider all relevant factors, [listed in the statute], where applicable[.]" At the time of the final hearing on this cause, the statute listed the following relevant factors:

> (1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
> (2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;
> (3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;
> (4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;
> (5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;
> (6) The love, affection, and emotional ties existing between each parent and the child;
> (7) The emotional needs and developmental level of the child;
> (8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . . ;
> (9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the

---

rather than a verbatim transcript. We have previously recognized that use of a statement of the evidence can sometimes cause this Court to be "somewhat limited in our review of the case[.]" ***Mealer v. Mealer***, No. 03A01-9408-GS-00264, 1995 WL 103661, at *2 (Tenn. Ct. App. Mar. 13, 1995).

child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. . . . ;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules;

(15) Any other factors deemed relevant by the court; and

(16) Whether a parent has failed to pay court-ordered child support for a period of three (3) years or more.

Tenn. Code Ann. § 36-6-106(a) (2023).[4]

The trial court found that factors (1), (4), (5), (6), (7), (9), (10), (11), and (12) favored Father, while factors (2), (3), (8), (13), (14), (15), and (16) were neutral or weighed in favor of neither party; the trial court found no factors to solely favor Mother. In reaching this result, the trial court primarily relied on Father's sole care of the children since the November 2022 ex parte order, Mother's refusal to place Daughter into public school as agreed, Mother's refusal to administer the children's ADHD medication despite the counselor's recommendation, and the abuse that the trial court found had taken place in Mother's home.[5]

In particular, with regard to the allegations of abuse, the trial court found as follows:

Mother testified that neither she nor her paramour, [Boyfriend], committed any physical or emotional abuse to the children. She stated that the children lie frequently and she does not believe that there has been any physical or emotional abuse perpetrated by [Boyfriend] upon her children, particularly [Daughter].

[Daughter] told Father, law enforcement, and her therapist that her

---

[4] The best interest factors in place at the time that Mother initiated this modification action were slightly different that the factors that were in place when the trial court issued its final ruling in 2023. The trial court applied the factors that were in effect at time of the final hearing. Mother does not take issue with the trial court's use of this version of the best interest factors, and the changes have little impact on this case. As such, we apply the same factors used by the trial court.

[5] Mother does not address the bulk of the best interest factors or the trial court's findings. We will not tax the length of this Opinion with discussion of factors or findings that are not disputed.

mother has a pink room in her house with a blanket as a door. She stated that she and her brother were required to be in the pink room on or about November 6, 2022, and she left the pink room for a drink. She stated that she spilled the drink, and [Boyfriend] came in yelling at her to get back into the pink room and he took his belt off and hit her twice on the bottom.

[Daughter] stated that she was crying and screaming for her mother and [Boyfriend] came into the pink room and removed the light bulb and nightlight. [Daughter] complained about being in the dark and [Boyfriend] punched [Daughter] in the face with his fist through the blanket that was used as the door. This caused a bruise on her face as evidenced by the pictures filed as an exhibit and the testimony of the therapist. [Daughter] stated that she screamed for her mother, and [Boyfriend] took two big speakers and sat them outside of the door and started playing music very loudly so Mother could not hear her crying and screaming. [Daughter] stated that she told Mother what happened, but Mother told her she was not listening to her again. The court finds this evidence to be credible.

On appeal, Mother first asserts that the trial court erred in finding that physical abuse took place in her home given her testimony that Daughter's injury was the result of roughhousing with Son and the various witnesses who testified that the children were known to not tell the truth. Indeed, Mother points out that even Father admitted that the children "lied about fifty percent (50%) of the time." But Mother asserts that the trial court failed to consider this evidence in finding that the abuse indeed occurred.

Given Mother's and Father's competing evidence on this issue, the question of whether abuse was perpetrated by Boyfriend in Mother's home must be resolved on the basis of credibility. It is well settled that "trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *Armbrister*, 414 S.W.3d at 693). Consequently, "appellate courts should afford trial courts considerable deference when reviewing issues that hinge on witness credibility because trial courts are 'uniquely positioned to observe the demeanor and conduct of the witnesses.'" *Id.* (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). Further, appellate courts "will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Id.* (quoting *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)).

Here, the parties offered diametrically opposed testimony as to whether Boyfriend physically and emotionally abused Daughter in Mother's home. The trial court clearly credited the testimony offered by Father that the abuse did occur. Mother points to no objections made concerning this testimony at trial. Moreover, even though there was testimony questioning the children's veracity, it does appear that the child disclosed this abuse in a fairly consistent manner to Father, a police officer, and her counselor. Having

considered all of the proof in the record on this issue, we cannot conclude that the evidence preponderates against the trial court's finding that this abuse occurred in Mother's home. And while the trial court apparently did not feel it necessary to prohibit Boyfriend from living in the home with Mother, the trial court did specifically rule that Boyfriend would not be permitted "to administer corporal punishment to the children." Based on the totality of the evidence, we cannot conclude that the trial court erred in ruling that the abuse should be weighed in favor of Father's effort to be named the children's primary residential parent. *See* Tenn. Code Ann. § 36-6-106(a)(11) (involving emotional and physical abuse), (12) (involving the character of persons residing with a parent).

Mother next asserts that the trial court erred in finding that factor (8), concerning "the moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent" was neutral. Tenn. Code Ann. § 36-6-106(a)(8). As to this factor, Mother asserts that the trial court failed to properly consider or take seriously evidence indicating that the children were engaging in inappropriate sexual behaviors in Father's custody. Testimony from Father, Father's wife, and Daughter's counselor confirmed that this behavior took place.

Despite Mother's argument otherwise, the trial court did weigh this evidence in connection with its consideration of the emotional needs of the children. As the trial court explained,

> According to the evidence, including the testimony of the therapist, [Daughter] has been inappropriately touching her brother. The evidence shows that this inappropriate touching has been occurring on a regular basis. Father and his wife . . . testified that she is a stay-at-home mom and could be present to supervise the children closely. She testified that she is in the house all day with the children and would not leave them alone, deterring any inappropriate touching. Father testified that he has placed cameras in the living room and has separate bedrooms for the children.

Thus, the trial court clearly took the allegations of inappropriate conduct seriously but trusted in Father's plan to prevent such conduct from occurring in the future. Moreover, after reviewing the statement of the evidence, there is nothing in the testimony of any party that attributes Daughter's behavior to any sort of misconduct on the part of Father or his wife. In fact, the trial court appeared to find that it was Father who was better equipped to meet the children's needs, as Mother refused to administer the ADHD medication prescribed to the children and refused to place the child in public school despite the parties' agreement. The proof also demonstrates that while Mother initiated therapy visits for the children, Father has maintained the counseling while the children were in his exclusive custody; in fact, the counselor testified that she has visits with the children three times per week. Under these circumstances, we cannot conclude that the trial court erred in finding that neither parent presented evidence that the emotional fitness of the other parent would

negatively affect their ability to parent the children.

Mother also points to other alleged facts that she asserts call into question Father's ability to parent, including (1) that Father's mental challenges prevented him from buying clothing in the correct size for the children; (2) that Father could not read; (3) that Father frequently cursed at Mother in the children's presence, and (4) that Father failed to seek medical attention for Daughter when she broke her arm. It is true that the trial court did not specifically find whether any of these claims by Mother were accurate.

Regardless, we are reluctant to second-guess the trial court's best interest findings in light of these allegations, particularly given the limited nature of the statement of the evidence on these issues. For example, the statement of the evidence submitted by Mother provides little context for the incident involving Daughter's broken arm, such as why or how long medical care was delayed. And the statement of the evidence indicates that Father specifically denied that he had limited reading skills or that he was unable to understand the children's schoolwork. Still, while we have no details concerning Father's derogatory remarks, there can be little justification for a parent to make derogatory remarks against their co-parent in the presence of the children.

Even if these allegations have some truth to them, however, we cannot conclude that they outweigh the facts the trial court found in favor of Father so as to justify interfering in the trial court's custody order. *See, e.g.*, **Gaskill v. Gaskill**, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996) (noting because child custody determinations "often hinge on subtle factors[,]" we are reluctant to second-guess a trial court's decision in this area). As this Court has explained, the trial court is not required to "render an ideal order, even in matters involving visitation, to withstand reversal." **Richardson v. Richardson**, No. M2020-00179-COA-R3-CV, 2021 WL 4240831, at *4 (Tenn. Ct. App. Sept. 17, 2021) (quoting Janet L. Richards, *Richards on Tennessee Family Law* § 9-2 (2d ed. 2004)). Here, the trial court gave "great weight" to the fact that Boyfriend engaged in physical abuse of Daughter in Mother's home. Moreover, Mother refused to medicate the children as prescribed and refused to enroll Daughter in public school as agreed. Although Father's home also presents its own concerns, the trial court appeared to be satisfied that Father was working to remedy any issues with the children in an appropriate manner. Thus, the evidence in the record does not preponderate against the trial court's findings that the majority of the best interest factors favored naming Father primary residential parent or that the abuse that occurred in Mother's home should be given particular weight. We therefore cannot conclude that the trial court erred in naming Father primary residential parent and awarding him the majority of the time with the children.

## V. CONCLUSION

The judgment of the Hardin County General Sessions is affirmed, and this cause is remanded for further proceedings as may be necessary and consistent with this Opinion.

Costs of this appeal are taxed to Appellant Natasha C., for which execution may issue if necessary.


s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE
